UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| IN RE: | Case No.: 19-31049 (AMN) |
| KAREN ANN HARTLEY<br>*Debtor* | Chapter 13 |
| CENLAR FSB and AMERICAN EAGLE FEDERAL CREDIT UNION<br>*Movants* | |
| v. | |
| KAREN ANN HARTLEY<br>*Respondent* | RE: ECF No. 34 |

## MEMORANDUM OF DECISION AND ORDER
## <u>FINDING CAUSE TO DISMISS CASE AND SCHEDULING FURTHER HEARING</u>

APPEARANCES

*Counsel for Movants:*

Linda St. Pierre, Esq.
McCalla Raymer Liebert Pierce, LLC
50 Weston Street
Hartford, CT 06120[1]

*Counsel for Respondent:*

Peter A. Lachmann, Esq.
250 West Main Street Room 210
Branford, CT 06405

    Before the court is a motion to dismiss the Chapter 13 bankruptcy case of Karen Ann Hartley (the "Debtor") with a two-year bar to re-filing any bankruptcy case (the "Motion to Dismiss"), filed by American Eagle Federal Credit Union and Cenlar FSB (collectively,

---

[1] The court notes that attorneys appearing on behalf of American Eagle Federal Credit Union in this case include Melicent B. Thompson, Esq.; A. Michelle Hart Ippoliti, Esq.; Elizabeth A. O'Donnell, Esq.; and Marc S. Edrich, Esq.  The motion to dismiss with two-year bar and the supporting memorandum of law were both filed by Attorney St. Pierre on behalf of both Cenlar FSB and American Eagle Federal Credit Union.

the "Lender").[2] ECF No. 34. For the reasons that follow, the court concludes there is cause to dismiss Debtor's case without a bar to refiling.[3]

This is a somewhat unusual Chapter 13 case in that the Debtor appears to have approximately $130,000.00 in equity in her residence, leaving the Lender with adequate protection at this time. What is not clear is whether the Debtor is able to propose a feasible Chapter 13 Plan, and whether the Debtor is able and willing to pay the real property taxes due during the post-petition time period. Because the court earlier established a deadline of April 24, 2020 for the Debtor to file a Fourth Amended Chapter 13 Plan, and to address this issue of unpaid real property taxes, a further hearing on the Motion to Dismiss will be scheduled for April 30, 2020, at 3:00 p.m. The court will also proceed with a status conference at that time regarding the feasibility of the Debtor's soon-to-be-filed Fourth Amended Chapter 13 Plan.

## I.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this case by virtue of 28 U.S.C. § 1334(b). This court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A). This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable in this proceeding pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

---

[2]    Cenlar FSB services the mortgage American Eagle Federal Credit Union holds on the Debtor's property. ECF No. 53.
[3]    The Bankruptcy Code provides some protection to creditors related to a debtor's serial filing of bankruptcy cases, set forth in 11 U.S.C. §§ 362(c) and 362(d)(4).

2

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. The 2016 Bankruptcy Case

On March 7, 2016, the Debtor filed her first Chapter 13 bankruptcy petition. Case No. 16-30337 (the "2016 Case"), ECF No. 1. Pursuant to a proof of claim filed on July 21, 2016, the Lender claimed it was due $42,015.69, secured in full by the Debtor's residence located at 68 Childs Road, East Hampton, Connecticut (the "Property"). 2016 Case, Proof of Claim No. 14-1. On January 11, 2017, the court confirmed the Debtor's third amended Chapter 13 Plan, which provided for monthly payments to the Chapter 13 Trustee in the amount of $1,270.00, which would have paid the Lender's claim, plus 5.5% interest, over sixty (60) months. 2016 Case, ECF Nos. 49, 61.

On December 7, 2017, the Debtor commenced an adversary proceeding against the Lender, seeking damages, attorney's fees, and costs for alleged violations of the confirmed Chapter 13 Plan, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Creditors' Collection Practices Act, Conn. Gen. Stat. § 36a-648. Adversary Proceeding No. 17-3024, AP-ECF No. 1. On July 30, 2018, the Debtor voluntarily dismissed the claims brought in the adversary proceeding with prejudice.[4] Adversary Proceeding No. 17-3024, AP-ECF No. 30.

On May 9, 2018, the Lender moved to dismiss the 2016 Case because the Debtor failed to pay property taxes and maintain homeowner's insurance. 2016 Case, ECF No. 66. After an evidentiary hearing on October 11, 2018, the court dismissed the 2016 Case without prejudice to re-filing for bankruptcy. Case No. 16-30337, ECF No. 86.

---

[4] Presumably, the dismissal was with prejudice to pursuing the Fair Debt Collection Practices Act and Creditors' Collection Practices Act claims.

3

### 2. Subsequent State Court Proceedings

As reflected in the filings in this case, on January 9, 2019, the Lender revived its state court foreclosure action against the Debtor by moving to reopen judgment and set a new sale day. *See*, ECF No. 34. On January 18, 2019, the Lender filed an affidavit of attorney's fees with the state court seeking allowance of attorneys' fees in the amount of $17,078.50. *See*, ECF No. 42, Exhibit A. In her objection to the Motion to Dismiss the debtor stated she had, "through counsel filed objections, memorandum and replies, including a copy of the settlement agreement," in the state court foreclosure case, none of those filings are before this court. *See*, ECF No. 42, para. 3. On April 29, 2019, the state court awarded attorney's fees in the far lower amount of $2,431.00, and reset the foreclosure sale date for August 3, 2019. *See*, ECF No. 24, Exhibit B. The Debtor's subsequent attempt to extend the sale date was unsuccessful. *See*, ECF No. 34.

### 3. The Current Bankruptcy Case

On June 27, 2019 ("Petition Date"), the Debtor initiated the present Chapter 13 bankruptcy case. ECF No. 1. On August 15, 2019, the Debtor commenced an adversary proceeding against the Lender and the law firm of McCalla Raymer Liebert Pierce, LLC, concerning the attorneys' fees incurred by the Lender during the prior bankruptcy case. Adversary Proceeding No. 19-3013, AP-ECF No. 1. On October 11, 2019, the Lender filed the present Motion to Dismiss this Chapter 13 case. ECF No. 34. The Lender asserts the Debtor's bad faith justifying not only dismissal but a lengthy bar to future bankruptcy relief is demonstrated by the following:

1. The Debtor's failure to pay property taxes or maintain hazard insurance on the property pre- and post-petition, forcing the Lender to advance $20,129.32 for pre-petition property taxes and $652.00 for force-placed insurance;
2. The Debtor's erroneous reliance on a future appeal of the local tax assessment for her home that could not retroactively modify the real property taxes that have

4

      already fallen due, and, the related, unjustified non-payment of post-petition property taxes;

3. The Debtor's failure to immediately re-file a Chapter 13 bankruptcy petition following the dismissal of the prior Chapter 13 bankruptcy case, despite alleged representations to the court that a new Chapter 13 petition would be filed and a new Chapter 13 Plan would address the additional amounts owed because of the advanced real property taxes and force-placed insurance;

4. "Frivolous" filings in the Foreclosure Case "in an effort to run up attorney's fees and thwart and delay the underlying foreclosure action"; and

5. The Debtor's initial failure during her testimony during the meeting of creditors to recall the adversary proceeding she had commenced against the Lender and the Lender's law firm, and, her inability to explain its purpose.

*See*, ECF. No. 34. In addition, according to the Lender, while the Debtor paid approximately $2,000.00 toward her real property taxes falling due on July 1, 2019 and nothing toward the real property taxes falling due in January 2020, leaving approximately $7,000.00 overdue and now owing. ECF Nos. 34, 88.

      On October 21, 2019, the Debtor objected to the Motion to Dismiss, asserting that she is "currently engaged" in appealing the property tax assessment and that the state court filings were meritorious because they reduced the amount of attorney's fees sought by the Lender. ECF No. 42. A hearing on the Motion to Dismiss was held on December 9, 2019.[5] ECF No. 42.

      On March 6, 2020, the Debtor's most recent Chapter 13 Plan was denied confirmation with leave to amend on or before April 24, 2020. ECF No. 90. Had it been approved, the most recently filed Chapter 13 Plan would have required the Debtor to make monthly payments of $1,299.91 over sixty (60) months, paying in full the Lender's claim of $57,926.49, plus 6.75% interest *per annum*. ECF No. 80; *see*, Proof of Claim

---

[5] Following the Lender's counsel's suggestion during the hearing that 11 U.S.C. § 1322(b)(2) may be applicable, the court ordered additional briefing on that issue. ECF No. 72. The Lender subsequently withdrew the § 1322(b)(2) claim. ECF Nos. 75, 78. Neither party offered testimony during the December 2019 hearing.

No. 4-1.  The Debtor's Schedule A/B values the Property at $195,000.00.  ECF No. 4.  This valuation is consistent with an April 24, 2019 appraisal that is apparently the Lender's valuation of the Property for the foreclosure case.  *See*, ECF Nos. 42, 42-4 (Exhibit D).

During a hearing on March 5, 2020, the Chapter 13 Trustee indicated the Debtor was almost current on plan payments, with a deficiency in the amount of $12.30.  *See*, ECF No. 88, 00:06:26–00:06:41.  During the same hearing, counsel for the Lender stated the Debtor's real property taxes were then delinquent in the amount of $6,971.59 through January 1, 2020, and, indicated the Debtor's annual real property tax obligation is $8,801.32.  ECF No. 88, 00:03:00 – 00:03:16; *see also*, ECF No. 34, Exhibit A.  The Lender argued, "[i]t is evident that the Debtor's habitual tax delinquency that occurred during her prior Chapter 13 case[] continues to occur in this present case with no resolution in sight."  ECF No. 34, p.9.  While the Debtor's counsel agreed post-petition taxes were owed and did not dispute the amounts provided by the Lender's counsel, he stated generally that the Debtor had attended some form of hearing concerning her real property assessment appeal the prior day.  *See*, ECF No. 88, 00:01:51 – 00:06:05.  No specific representations regarding the Debtor's imminent payment of any tax obligations becoming due post-petition were made.

During the course of this case, the Debtor filed a Third Amended Chapter 13 Plan proposing to pay the secured claim of the Lender, but not addressing the Town of East Hampton's unpaid taxes.  ECF No. 80.  Confirmation of the Plan was denied, with leave to file another amended Chapter 13 Plan on or before April 24, 2020.  ECF No. 90.  The court notes the Debtor's list of creditors in this case does not include the Town of East Hampton, or its tax collector, perhaps because at the commencement of the case the

Debtor's tax status was up-to-date due to the Lender's payment of amounts then outstanding.[6]

### III. APPLICABLE LAW

#### 1. Failure to Pay Property Taxes as Cause for Dismissal

##### a. § 1307(c)(1) Unreasonable Delay Prejudicial to Creditors

Cause to dismiss a Chapter 13 case may be found where there has been "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c)(1). An unreasonable delay that results in a "rapidly eroding equity cushion" may provide sufficient cause to dismiss a case pursuant to § 1037(c)(1). *In re Wynn*, 573 B.R. 485, 493 (Bankr. W.D.N.Y. 2017), *order aff'd, appeal dismissed*, 17-CV-6547L, 2018 WL 10038798 (W.D.N.Y. Feb. 15, 2018).

##### b. The Connecticut Real Property Tax Appeal Process

The Lender's arguments about the prejudicial effect of the Debtor's failure to pay real property taxes require some insight into Connecticut's municipal property tax framework. Under Connecticut law, municipal property taxes are assessed annually on October 1, and are then generally due and owing in installments the following July, and then January. Conn. Gen. Stat. § 12-62a; Conn. Gen. Stat. § 12-142 (permitting municipalities to elect to collect property taxes in single, semiannual, or quarterly installments); *see also*, Conn. Gen. Stat. § 7-383 (requiring a single installment or the first of semiannual or quarterly installments to be due on July 1). For example, property taxes

---

[6] The court does not reach the main issue addressed in a case cited later, *In re Donahue*, 520 B.R. 782, 787 (Bankr. W.D. Mo. 2014): whether the real property taxes due in July 2019 and January 2020 were *pre-petition* claims required to be treated in the case or in the Chapter 13 Plan. Neither party raised this issue.

7

assessed on October 1, 2018, might be due in two installments, the first on July 1, 2019, and the second on January 1, 2020.

A taxpayer seeking to challenge an assessment must file an appeal with the municipality's board of assessment appeals (the "Board") on or before the subsequent February 20. Conn. Gen. Stat. § 12-112. The Board may resolve an appeal with or without a hearing. Conn. Gen. Stat. § 12-111. If the Board decides to hear the appeal, it will schedule a hearing during its March session and render a decision shortly thereafter. Conn. Gen. Stat. § 12-110(b). The Debtor's municipality of East Hampton, Connecticut, employs these procedures. *See*, *Board of Assessment Appeals*, Town of East Hampton, Connecticut, https://www.easthamptonct.gov/board-assessment-appeals (last visited April 14, 2020) ("The Board meets during the month of March to hear appeals of real estate, personal property, and motor vehicles on the supplemental list. . . . Application must be made between February 1 and February 20 for a hearing during the Board's March sessions."). Then, on July 1, either the first installment or the full balance of the tax obligation is due.

A taxpayer may appeal the Board's decision to the Superior Court of Connecticut within sixty (60) days of the date the Board mails notice of its decision. Conn. Gen. Stat. § 12-117a. Merely filing an appeal to the Superior Court does not stay the deadline to pay taxes, and a taxpayer must pay a portion of the tax under protest.[7] Conn. Gen. Stat. § 12-117a. Thus, the taxpayer remains under the obligation to pay some part of the assessed property tax while the assessment appeal is pending.

---

[7] If the property is assessed below $500,000, the taxpayer must pay 75% of the property tax owed, and if the property is assessed above $500,000, the taxpayer must pay 90% of the property tax owed. Conn. Gen. Stat. § 12-117a.

8

Under Connecticut law, a lien in the amount of the assessed property tax attaches to the corresponding real estate on the October 1 assessment date. Conn. Gen. Stat. § 12-172. A tax lien held by a municipality is senior to all other encumbrances and will increase if interest on the obligation accrues. Conn. Gen. Stat. § 12-172. Unpaid property taxes accrue interest at a rate of eighteen (18%) percent per year, commencing when an installment payment is not timely made. Conn. Gen. Stat. § 12-146.

### c. Erosion of a Lender's Equity Cushion When Taxes Are Unpaid

As a result of this special status afforded to tax liens, the accrual of unpaid property taxes and accumulating interest may erode a mortgage holder's security interest by diminishing its equity cushion. An equity cushion is defined as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect." *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) (quoting *In re Heath*, 79 B.R. 616, 618 (Bankr. E.D. Pa. 1987)).

The automatic stay does not prevent the creation of statutory liens on account of real property taxes. 11 U.S.C. § 362(b)(18). Prompt payment of real property taxes is indicative of the debtor's ability to complete a Chapter 13 Plan, and nonpayment may be cause for dismissal or conversion. *See*, *In re Meltzer*, No. BR 19-21110-PRW, 2020 WL 129441, at *3 (Bankr. W.D.N.Y. Jan. 10, 2020); *see also*, *In re Donahue*, 520 B.R. 782, 787 (Bankr. W.D. Mo. 2014); *In re Kuhn*, 322 B.R. 377, 394 (Bankr. N.D. Ind. 2005).

### 2. Bad Faith as a Cause for Dismissal with Prejudice

Pursuant to 11 U.S.C. § 1307(c), "on request of a party in interest . . . the court may convert a [Chapter 13 case] to a case under chapter 7 of this title, or may dismiss a

case . . ., whichever is in the best interests of creditors and the estate, for cause. . . ."[8]  In addition to § 1307(c)'s non-exhaustive list of conditions constituting cause, *see* 11 U.S.C. § 1307(c)(1)–(11), "it is well established that a lack of good faith may also be cause for dismissal under § 1307(c)."  *In re Ciarcia*, 578 B.R. 495, 499 (Bankr. D. Conn. 2017) (quoting *In re Prisco*, 2012 WL 4364311, at *4 (N.D.N.Y. 2012)).

The question of whether a debtor is proceeding in good faith requires an inquiry into the totality of the circumstances, and the court considers, "whether the debtor has abused the "provision, purpose or spirit" of the Bankruptcy Code and whether the filing is "fundamentally fair" to creditors."  *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009) (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)).  Relevant factors include "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor' actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code."  *In re Lin*, 499 B.R. 430, 436 (Bankr. S.D.N.Y. 2014); *see also*, *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (noting that the protections of the Bankruptcy Code are afforded only to the "honest but unfortunate debtor").

"Where a party calls into question a debtor's good faith and meets their initial burden of showing cause for dismissal, the burden shifts to the debtor to show her good faith."  *Ciarcia*, 578 B.R. at 500 (citing *In re Lombardo*, 370 B.R. 506, 513 (Bankr. E.D.N.Y. 2007)).

---

[8] Unless otherwise noted, statutory references are to the Bankruptcy Code, found at Title 11, United States Code.

Pursuant to 11 U.S.C. § 349(a), dismissal is generally without a bar to the debtor re-filing for bankruptcy; however, § 349(a) authorizes a bankruptcy court to dismiss a case with a bar to refiling upon a finding of cause. *See*, *In re Partch*, No. 19-51084 (JAM), 2020 WL 211447 at *2 (Bankr. D. Conn. Jan. 7, 2020) (citing *In re Casse*, 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998), *aff'd*, 198 F.3d 327 (2d Cir. 1999)).

### 3. Voluntary Nature of Chapter 13 Relief

The Bankruptcy Code provides mechanisms for forcing a debtor into bankruptcy proceedings through an involuntary bankruptcy petition, subject to limitations on who may commence such a case and certain protections afforded to the involuntary debtor. *See*, 11 U.S.C. § 303. The Code does not permit involuntary cases to be commenced under Chapter 13, "reveal[ing] a concern about involuntary servitude and the Thirteenth Amendment." 2 Collier on Bankruptcy ¶ 303.03 (16th 2020). Thus, the Code lends little support for the idea that a promise to file a Chapter 13 bankruptcy petition could be enforced if the individual fails to perform.

By contrast, an agreement or limitation on an individual's right to seek some aspect of bankruptcy protection is unenforceable as a matter of public policy. *See*, *Rogers v. Chorba (In re Rogers)*, No. 08-3080 (LMW), 2010 WL 1571196 at *9 n.8 (Bankr.D.Conn. Apr. 19, 2010) (citing *Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1996) ("[A]n advance agreement to waive the benefits of the [Bankruptcy] Act would be void.")); *see also*, *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1026 (9th Cir. 2012); *Klingman v. Levinson*, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987). Relatedly, an agreement with a debtor whereby a creditor may commence an involuntary Chapter 7 petition may be enforceable. *See*, *In re FMB Bancshares, Inc.*, 517 B.R. 361, 368–69 (Bankr. M.D. Ga. 2014)(creditor was

11

permitted by an agreement with a debtor to commence an involuntary Chapter 7 petition against the debtor).

## IV. DISCUSSION

The Lender urges dismissal with a bar to the Debtor's ability to refile any bankruptcy case relying on the following: (1) the Debtor's unjustified failure to pay post-petition real property taxes or to maintain insurance; (2) her failure to re-file a Chapter 13 bankruptcy petition following the dismissal of her previous bankruptcy case; (3) frivolous and dilatory filings in the Foreclosure Case in state court; and, (4) her inability to recall the existence and nature of the adversary proceeding commenced in connection with this bankruptcy case.  *See*, ECF No. 34.

### 1. Cause to Dismiss Pursuant to 11 U.S.C. § 1307(c)(1)

Here, I am asked to decide whether there is cause to dismiss the Debtor's second Chapter 13 case, and if so, whether there is sufficient *indicia* of bad faith to warrant a bar to refiling for a period of time.  The Debtor concedes the Lender's allegations that pre-petition real property taxes due before the Petition Date here were paid by the Lender, and, that significant real property taxes due in July 2019 and January 2020 remain overdue and unpaid.  *See,* ECF Nos. 42; 88.  The Debtor did pay approximately $2,000.00 toward the July 2019 real property tax installment payment, leaving approximately $7,000.00 now due to the Town of East Hampton, Connecticut.  *See,* ECF No. 88.  Pre-petition, the Lender paid $20,129.32 to the Town so that earlier unpaid tax liens would no longer accrue interest at a rate of eighteen (18%) percent *per annum.*  These findings are supported by a payment history attached as Exhibit A of the Lender's Motion to Dismiss and updated information provided by Lender's counsel during the March 5 hearing.  The Debtor has not contested these amounts either during the hearings held December 9,

12

2019 and March 5, 2020, or by filing rebuttal evidence. During the December 9 hearing, Debtor's counsel was not able to say whether an assessment appeal was presently pending and has not submitted evidence of an appeal filed in 2019. *See*, ECF No. 69, 00:07:32 – 00:08:19. During the March 5, 2020 hearing, Debtor's counsel represented that the Debtor had attended a hearing concerning her assessment appeal on March 4, 2020. Again, no evidence of a 2020 assessment appeal has been submitted for the court's consideration.

Ultimately, whether the Debtor filed an assessment appeal in 2020 is irrelevant to her failure to pay real property taxes in full during the post-petition period. As described above, even if a taxpayer appeals a real property tax assessment, there remains an affirmative obligation to make timely tax payments of at least seventy-five (75%) percent of the tax due. Conn. Gen. Stat. § 12-117a. A successful assessment appeal initiated in February 2020 would impact only the taxes that were assessed on October 1, 2019 and will be first billed on July 1, 2020. *See*, Conn. Gen. Stat. §§ 12-62a, 12-111, 12-112, 12-142. Thus, any 2019 or 2020 appeal would have no effect on the Debtor's obligation to pay property taxes assessed in prior years, including those already advanced by the Lender.[9]

Even assuming *arguendo* the Debtor had a tax assessment appeal pending during July 2019, she still would have been required to pay seventy-five (75%) percent of the

---

[9] To the extent the Lender asserts the Debtor lacks good faith based on the fact she had not filed an appeal despite stating an intent to do so, the procedures of the Town of East Hampton provide that a taxpayer may only file an appeal between February 1 and February 20. The Debtor's failure to file an assessment appeal before February 1, 2020 cannot indicate bad faith. Apart from Debtor's counsel's representation that the Debtor had attended a March 4, 2020 hearing concerning her assessment appeal, neither party supplemented the record after February 20, 2020 for the court to draw a conclusion about whether the Debtor in fact pursued an assessment appeal during the relevant time period. While I recognize the Debtor's intent to dispute real property taxes was asserted by Debtor's counsel several times without an apparent understanding of the appellate process and relevant timing provided by the state statute, the court will not impute bad faith to the Debtor on this account.

disputed tax amount. Instead, she paid far less. Meanwhile, since this case commenced the Lender's mortgage lien has been subordinated to ever-increasing real property tax liens with interest accruing at a rate of eighteen (18%) percent *per annum.*

Here, I find the failure to pay real property taxes in two separate cases spanning several years combined with the Debtor's manner of pursuing this case – with persistent representations that payment of real property taxes are ever-forthcoming only to have little or no payment made – to constitute prejudicial delay to the Lender. While the Debtor or her counsel have appeared unfamiliar with the statutory scheme for real property tax assessment appeals, the statutory scheme was described and highlighted during several hearings, but no effort has been made to bring the real property taxes current save payment of approximately twenty-five (25%) percent of the amounts due.[10]

Because it appears the Debtor is unwilling or unable to pay the real property taxes owed on her home, further pursuit of this Chapter 13 case is not "fundamentally fair" to the Lender. *See*, *Armstrong*, 409 B.R. at 634. Between the 2016 Case and the current case, the Lender sought to proceed with foreclosure on the Debtor's residence, and the state court set a sale date for August 3, 2019. The Debtor sought bankruptcy protection just over one (1) month prior to the sale date, on June 27, 2019. As a result of this bankruptcy case, the Lender is stayed from proceeding with the foreclosure action while interest accruing on the delinquent property taxes reduces its equity cushion. While the Lender enjoys a significant equity cushion that adequately protected it throughout the 2016 Case, and through this case, the Debtor cannot continue to delay the Lender without

---

[10] While counsel for the Debtor did not have precise information regarding the Debtor's real property taxes during the hearings in this case, he did generally concur with the representations of Lender's counsel during a hearing on March 5, 2020, from which I conclude approximately $7,000.00 remains outstanding at this time. *See also,* ECF No. 34, Exhibit A.

addressing overdue real property taxes.  She is unwilling or unable to do so.  In effect, other than the approximately $2,000.00 paid by the Debtor in 2019, approximately $27,000.00 of unpaid real property taxes accrued that the Debtor has not paid, all to the prejudice of the Lender.

Because this case appears to lack feasibility and otherwise serves no purpose other than to delay the Lender's ability to foreclose on the property, causing unreasonable prejudice to the Lender, the court concludes there is sufficient cause to dismiss the case within the meaning of 11 U.S.C. § 1307(c)(1).

### 2. Cause to Impose a Two (2) Year Bar

In addition to seeking dismissal of this case, the Lender seeks to bar the Debtor from seeking bankruptcy protection for the two (2) years following dismissal of this case. The court is not persuaded that the Debtor's conduct rises to the level of egregiousness where a bar would be appropriate.

#### a. Failure to Re-File a Bankruptcy Petition

To support its argument for dismissal with a two (2) year bar, the Lender asserts the Debtor committed to immediately re-file a bankruptcy petition after the dismissal of the 2016 Case to address newly delinquent property taxes (due during 2019) and amounts advanced by the Lender for prior unpaid property taxes.  ECF No. 34; Proof of Claim 4-1, p.9.  The Lender alleges the Debtor's representation that she would re-file a bankruptcy petition made to the Lender was made in bad faith.  ECF No. 34.  The Lender does not rely on a writing but rather references discussions among counsel for the Lender, counsel for the Debtor, and the Debtor made on the record during the hearing held to consider dismissal of the 2016 Case.  During the October 11, 2018 hearing, counsel for the Lender stated, "I am recommending, and I am suggesting, that the case be dismissed

15

in hopes that the Debtor can re-file and rectify this problem in a new filing." Case No. 16-30337, ECF No. 85, 00:07:12–00:07:21. Later in the hearing, the following exchange occurred:

> Court: I want you to understand what [the Lender's counsel] is saying, is if the case were dismissed, and next week you file again, you could propose a plan with your new case that takes all of this money and in one lump sum and says ok now I'm going to pay that over five years.
>
> Debtor's Counsel: Well, that seems where you're going with this, and that would be plan B, I think.
>
> Debtor: Yeah, I mean, I am willing, you know, to re-do all this, I just looked at the fact that I was only two-and-a-half years from paying off.
>
> Court: I know. The thing is, you're not going to get a discharge if you haven't paid everything that is required to be paid during these two years. If you've got other debt that's accrued, you've got a problem, because you've haven't cured the mortgage arrearage at that point.
>
> Debtor: Right.
>
> Court: You haven't cured the problem with the mortgage lender. I'm not sure it would be—
>
> Debtor: I didn't know the taxes were that high—
>
> Court: I think it is very—
>
> Debtor: Ignorance, didn't—
>
> Court: I know, it's that it's very attractive to think there is only two-and-a-half more years and then there's light at the end of the tunnel. And I understand that. My concern is that, while you've been going through this tunnel, it's getting worse. Your problem has been getting worse because you haven't paid the real estate taxes, and those real estate taxes are really dangerous not to pay because of the very high interest rate.
>
> Debtor's Counsel: Well it looks like we can all agree to dismiss the case without prejudice.
>
> Court: Alright, if that's your agreement then I'm going to enter an order dismissing the case without prejudice.

ECF No. 85, 00:12:46–00:14:43.

Upon review of the above excerpt as well as the hearing in its entirety, the court does not find the record to support the Lender's assertions that the Debtor "represent[ed] to a Federal Judge that she was going to immediately re-file a new Chapter 13 case. . . ." ECF No. 34. Instead, the Debtor and her counsel merely asked that the case be dismissed without prejudice and represented that the Debtor would consider re-filing a bankruptcy case sometime soon. This falls far short of an enforceable agreement on which the Lender relied to its detriment.[11] Considering the voluntary nature of the Chapter 13 process, while an agreement between a creditor and a willing debtor for the debtor to file bankruptcy may not be *per se* unenforceable, the Bankruptcy Code does not support the idea of permitting a creditor to force an unwilling debtor into a Chapter 13 case.

Accordingly, the court disagrees with the Lender's allegation that the Debtor made statements in bad faith about re-filing a bankruptcy petition to mislead the court or the Lender and cannot conclude these statements support the imposition of a two (2) year bar.

### b. The Debtor's State Court Filings

In arguing the Debtor attempted to delay the state court foreclosure action through frivolous filings, the Lender describes only one filing, an unsuccessful motion to extend the sale date. ECF No. 34. The Lender does not mention any other filings and does not attach the state court docket for the court to consider. On the other hand, the Debtor attaches a state court filing showing the Lender initially sought $17,078.50 in attorney's

---

[11] Moreover, the court notes the Lender asserts it is in first position on the Debtor's real property, with an equity cushion of approximately $130,101.92. It is unclear the Lender lacks adequate protection even under the significant delay that occurred here.

fees and the state court's order approving attorney's fees in the amount of $2,431.00. ECF No. 42, Exhibits B, C.

Both parties invite the court to wade into the state court case without providing the full context of those proceedings. Based on this scant record, the court finds little support for the conclusion that the Debtor's conduct in the state court case is indicative of the Debtor's bad faith in this bankruptcy case. Accordingly, the court cannot conclude that the Debtor's state court filings support imposing a two (2) year bar.

### c. 341 Meeting Statements

Finally, the Lender argues that the Debtor's testimony during the meeting of creditors regarding the related adversary proceeding is further evidence of her bad faith and constitutes cause for a two (2) year bar to re-filing a bankruptcy petition. The Lender states, "[i]t is clearly shown from the testimony solicited that the Debtor does not comprehend what the lawsuit entails but instead appears that she is allowing her attorney to act on her behalf but without her knowledge of what is really happening or why it is happening." ECF No. 34.

Because the Lender alleges merely that the Debtor does not know what is happening in the adversary proceeding or why, the Lender failed to establish the Debtor is motivated by an improper purpose. The Debtor is not an attorney and during her testimony at the creditors' meeting she appeared not to understand the procedural posture or import of aspects of the litigation. But this is not uncommon for a litigant represented by counsel in the highly technical arena of a bankruptcy case, and without more the court declines to draw the inference that the Debtor lacked good faith in commencing the 2019 case. The Lender does not articulate – and the court fails to see – how the Debtor's unfamiliarity with the details of adversary proceeding is cause for a

bar, as counsel for the Debtor filed the complaint and has pursued the adversary proceeding.

### 3. Best Interests of the Creditors and the Estate

Turning to the best interests of creditors and the estate and taking into account an earlier order requiring the Debtor to file an amended Chapter 13 Plan on or before April 24, 2020, any consideration of the totality of the circumstances requires that I consider what the Debtor's proposal is to both pay the Lender's secured claim, and to address the unpaid tax amounts that have become due during the pendency of this case. As announced during a hearing held on April 14, 2020, these matters will be addressed during a status conference to consider any timely filed Fourth Amended Chapter 13 Plan filed by the Debtor to be held on April 30, 2020, at 3:00 p.m. A separate Scheduling Order will enter regarding the status conference.

### V.  CONCLUSION

The court notes the Debtor has done most of the things required of a Chapter 13 Debtor: she paid the filing fee and filed all required documents in two (2) bankruptcy cases and has remained mostly current on her post-petition payments to the Chapter 13 Trustee. *Cf.*, *In re Moore*, No. 19-51257 (JAM), 2020 WL 1207911 (Bankr. D. Conn. Mar. 10, 2020) (dismissing case with three (3) year bar where the debtor was ineligible for Chapter 13, could not propose a feasible plan, attempted to relitigate issues disposed of in a prior bankruptcy case, and demonstrated a pattern of filing "hopeless cases" to frustrate a foreclosure action); *Partch*, 2020 WL 211447 (dismissing case with two (2) year bar where the debtor sought multiple extensions to file required documents, filed the documents after the extended deadlines, failed to pay the full filing fee, failed to move to extend the automatic stay, failed to make any payments to the Chapter 13 Trustee, and

failed to address all proofs of claim in the proposed Chapter 13 plan); *In re Bolling*, 609 B.R. 454 (Bankr. D. Conn. 2019) (dismissing case with two (2) year bar where the debtor's most recent case was the eleventh case filed prior to a law day set in a state court foreclosure action and where the debtor habitually failed to attend 341 meetings, pay the filing fee, or move to extend the automatic stay).

But, the Debtor here has failed to adequately address her real property tax situation for several years and failed to make required post-petition real property tax payments thereby eroding the Lender's equity cushion, causing unreasonable prejudice to the Lender.  While the court declines to draw an inference of bad faith from the totality of the circumstances before the court and therefore will not impose a two (2) year bar to re-filing any bankruptcy case, the court will consider entering an order of dismissal on April 30, 2020 if any amended Chapter 13 Plan that is timely filed is not likely to be confirmed within a reasonable time or is determined to be unfeasible.

**ACCORDINGLY**, it is hereby

**ORDERED**: That, a continued hearing on ECF No. 34, the Motion to Dismiss, shall be held on April 30, 2020, at 3:00 p.m.; and it is further

**ORDERED:**  In light of the conclusion there is cause to dismiss this case within the meaning of 11 U.S.C. § 1307(c)(1), the court will consider whether the best interests of the creditors and the estate require dismissal at that time.

Dated this 14th day of April, 2020, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut